USCA1 Opinion

 

 December 24, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 96-1278 MARIA DE LOS ANGELES SANCHEZ, Plaintiff, Appellant, v. CARLOS ALVARADO, ET AL., Defendants, Appellees.  __________________ ERRATA SHEET The opinion of this Court, issued December 2, 1996, is amended as follows: P.7, l.4, should read: . . . relief could be granted . . .  UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 96-1278 MARIA DE LOS ANGELES SANCHEZ, Plaintiff, Appellant, v. CARLOS ALVARADO, ET AL., Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ___________________  ____________________ Before Cyr and Boudin, Circuit Judges, ______________ and Ponsor,* U.S. District Judge. ___________________  ____________________ Edwin Prado, with whom Pedro Salicrup was on brief for appellant. ___________ ______________ Edgardo Rodriguez Quilichini, Assistant Solicitor General, ______________________________ Department of Justice, with whom Carlos Lugo Fiol, Solicitor General, _________________ and Edda Serrano Blasini, Deputy Solicitor General, were on brief for ____________________ appellees.  ____________________ December 2, 1996  ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. CYR, Circuit Judge. Plaintiff Maria de los Angeles CYR, Circuit Judge.  _____________ Sanchez ("Sanchez") appeals a summary judgment ruling rejecting her civil rights claim, see 42 U.S.C. 1983, alleging liability ___ on the part of certain supervisory personnel at Puerto Rico Electric Power Authority ("PREPA") for failing to take appropri- ate action against defendant-appellee Omar Santiago, whose persistent harassment prompted Sanchez to tender her resignation. We affirm the district court judgment. I I BACKGROUND1 BACKGROUND __________ The pattern of harassment began when Santiago, a PREPA employee, telephoned Sanchez at her office in September 1988 and invited her to dinner. A few days after Sanchez declined the invitation she received a call from another PREPA employee, informing her that she should expect to hear from Santiago again since he had an ongoing bet that he would succeed in his quest. Later that month, Santiago approached Sanchez and stated that they should talk. As Sanchez walked away, Santiago exclaimed that she would see what he was capable of and if she complained about his behavior he would cause her harm.  The first supervisor with whom Sanchez discussed Santiago's behavior, defendant-appellee Ramon Figueroa, tried to persuade her not to file a formal charge with PREPA's Equal Employment Opportunity Office (EEOO), stating that everyone was  ____________________ 1All material facts in genuine dispute are related in the light most favorable to Sanchez. Velez-Gomez v. SMA Life Assur. ___________ _______________ Co., 8 F.3d 873, 875 (1st Cir. 1993) ___ 3 entitled to one mistake.2 Upon learning that Santiago had already been the subject of a sexual harassment complaint by another female employee, however, Ramon actively encouraged Sanchez to file a formal complaint. On November 15, 1988, defendant-appellee Carlos Alvarado, then the Director of PREPA, circulated a memorandum on the subject of sexual harassment, referencing a 1988 statute prohibiting sexual harassment in the workplace. Within two weeks, three of Santiago's supervisors, including defendant- appellee Edwin Miranda Velez, met with him to discuss the inci- dent reported by Sanchez. After Santiago denied any wrongdoing, the supervisors informed him of PREPA's sexual harassment policy and directed him to keep away from the floor on which Sanchez worked. Upon encountering Sanchez with another female employee approximately three weeks later, however, Santiago called them lesbians. Three days later, on December 8, 1988, Sanchez filed her first complaint with the EEOO.  On April 14, 1989, following its investigation into the first complaint, the EEOO found that Santiago's conduct consti- tuted sexual harassment, and recommended a reprimand and counsel- ling. Several weeks later, when Santiago met with supervisors to discuss the EEOO report, he was reminded that sexual harassment  ____________________ 2We assume, without deciding, that all PREPA supervisory 2 personnel named as defendants were in fact "supervisors" poten- tially subject to liability under 1983 in that Santiago was their subordinate. See Lipsett v. University of Puerto Rico, 864 ___ _______ _________________________ F.2d 881, 902 (1st Cir. 1988) (holding that a constitutional violation by a subordinate is a predicate for supervisory liabil- ity under 1983); see also p. 8 infra (quoting Lipsett). ___ ____ _____ _______ 4 was prohibited by law. Once again he was warned that formal charges would be filed against him for any further harassment and that he was to stay away from Sanchez while on PREPA property. On May 30, 1989, Sanchez filed her second complaint with the EEOO, relating to Santiago's conduct between May 15 and 19. During that four-day period, Santiago left notes on Sanchez's automobile, suggesting that they go to a motel; fol- lowed her on the highway, almost causing a collision; blew kisses at her; and provoked a fistfight with Sanchez's boyfriend. At the same time, Sanchez pointed out that Santiago was scheduled to represent PREPA in a basketball game the following weekend. The EEOO promptly contacted the person in charge of the team and recommended that Santiago not be allowed to do so.  The EEOO Director, defendant-appellee Amada Nieves, met with Santiago at his request on July 7, 1989. Ms. Nieves remind- ed him that the May 24 meeting had been a warning that his behavior toward Sanchez constituted sexual harassment. She informed him that Sanchez had since filed a second complaint and that Nieves herself would interview him about it in the near future.  Within a week, defendant-appellee Camille Galanes, an assistant to Nieves, telephoned Sanchez at her office and at- tempted to persuade her to drop the second complaint. Ms. Galanes suggested that following up on the second complaint might not be necessary because no further incidents had been reported after Santiago was reprimanded in connection with the first com- 5 plaint. Sanchez adamantly disagreed, however, stating that Santiago had not been at work between May 25 and June 14, and the mere fact that she had not encountered him in the interim did not mean his attitude had changed.  At a meeting with Ms. Galanes on August 15, 1989, Santiago expressed concern about the possible adverse effects the earlier reprimand might have upon his professional future. Galanes reiterated the warning that Santiago was not to approach Sanchez on PREPA property.3 Although Santiago continued to deny any wrongdoing, he assured Galanes that he was "not going to go anywhere near" Sanchez.4 On October 13, 1989, Director Nieves telephoned Sanchez on matters relating to Santiago. As Sanchez was not in, Nieves left a message. The record does not disclose whether Sanchez returned the call.  Sanchez filed her third complaint with the EEOO on April 3, 1990, stating that she had received four unwanted floral arrangements from Santiago, three within a span of six days during December, 1989; that Santiago followed her when she went  ____________________ 3On more than one occasion, EEOO Director Nieves told Sanchez that she was too "nervous" and that the harassment might be a product of her perception, noting that Sanchez had no witnesses. Paradoxically, Nieves even recommended that Sanchez directly confront Santiago despite the fact that Santiago had been forbidden to approach Sanchez on PREPA property since showing fear could only encourage Santiago.  4Unchastened, a few weeks later Santiago berated a group of female employees (Sanchez not included) as "small and dirty." The EEOO investigated the incident and recommended a formal charge. Santiago was so informed on December 20, 1989. Ulti- mately, Santiago was suspended for a week, without pay, based on these charges. 6 to lunch, and whistled when she passed him in the workplace lobby; and that he telephoned her at her office between twelve and fifteen times a day. The EEOO promptly investigated the third complaint and, on June 7, 1990, once again recommended that Santiago's supervisor file formal charges against him. On June 15, 1990, Santiago's supervisor informed him that she was press- ing charges.  Sanchez submitted her resignation on July 2, effective July 20. Although EEOO Director Nieves met with her on July 18 regarding the status of the third complaint against Santiago, Sanchez failed to mention her resignation. After Sanchez left PREPA, the EEOO continued to press ahead with the charges relat- ing to the third complaint against Santiago, and asked Sanchez to testify. The charges eventually were dismissed for lack of evidence after Sanchez failed to appear without explanation. Approximately a year later Sanchez commenced the present action against Santiago and various PREPA supervisory employees,5 alleging Title VII and civil rights claims, as well as a pendent tort claim against Santiago under Puerto Rico law. The district court first dismissed the Title VII claim for failure to exhaust administrative remedies. The supervisory liability claims under section 1983 were subsequently dismissed  ____________________ 5The named defendants also included Alvarado's successor, as the Director of PREPA, Jose Del Valle; Jose Cobian, Director of Human Services; Luis Crespo Marcial, Supervisor of Planification and Studies; Maria Hernandez, Executive Assistant to the Execu- tive Director, as well as "John Doe" defendants whose identities were unknown.  7 as time-barred. After this court reinstated the supervisory liability claims, Sanchez v. Alvarado, 993 F.2d 1530 (1st Cir. _______ ________ 1993) (Table), the district court again granted summary judgment for all supervisory defendants on the ground that Sanchez had not generated a trialworthy dispute. Finally, the court dismissed the pendent tort claim and the remaining section 1983 claim against Santiago for failure to state a claim upon which relief could be granted since liability on the part of a co-employee under section 1983 cannot attach unless the alleged harassment involved misuse of power under the authority of state law. Sanchez contends on appeal that the district court improperly resolved a genuine issue of material fact at summary judgment in dismissing her section 1983 supervisory liability claims.6 II II DISCUSSION DISCUSSION __________ 1. Standard of Review 1. Standard of Review __________________ We review a grant of summary judgment de novo. Velez- __ ____ ______ Gomez, 8 F.3d at 874-75. It will be affirmed if "the pleadings, _____ depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "'the evidence about the fact is such  ____________________ 6As we affirm the dismissal of all federal claims, we do not reach Sanchez's request for reinstatement of the pendent tort claim against Santiago. See Newman v. Burgin, 930 F.2d 955, 963 ___ ______ ______ (1st Cir. 1991). 8 that a reasonable jury could resolve the point in the favor of the non-moving party.'" Rivera-Muriente v. Agosto-Alicea, 959 _______________ _____________ F.2d 349, 352 (1st Cir. 1992) (quoting United States v. One _____________ ___ Parcel of Real Property, Etc., 960 F.2d 200, 204 (1st Cir. ________________________________ 1992)). "A fact is material if it 'carries with it the potential to affect the outcome of the suit under the applicable law.'" One National Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996) _________________ __________ (quoting Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 ________________ ______________ (1st Cir. 1993)). See also Anderson v. Liberty Lobby, Inc., 477 ___ ____ ________ ____________________ U.S. 242, 247-48 (1986). Thus, the substantive law defines which facts are material. Id. at 248. ___ 2. Supervisory Liability  2. Supervisory Liability _____________________ Supervisory liability under 42 U.S.C. 1983 cannot be predicated on the doctrine of respondeat superior. Gutierrez- __________ Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). A _________ _________ supervisor can be held liable "only on the basis of her own acts or omissions." Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st ________ ____________ Cir. 1989). As we have explained:  [A] state official . . . can be held liable . . . if (1) the behavior of [a] subordinate[] results in a constitutional violation and (2) the official's action or inaction was "affir- mative[ly] link[ed]" to that behavior in that it could be characterized as "supervisory encouragement, condonation or acquiescence" or "gross negligence amounting to deliberate indifference." Lipsett, 864 F.2d 902 (citations omitted). More recently we have _______ noted that an "indifference that rises to the level of being deliberate, reckless or callous, suffices to establish liability 9 under 1983." Gutierrez-Rodriguez, 882 F.2d at 562. The ___________________ requirement of an "affirmative link" between the behavior of a subordinate and the action or inaction of the defendant official "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 _______ _______________ F.3d 1367, 1380 (1st Cir.), cert. denied, 116 S. Ct. 675 (1995).  ____ ______ 3. Summary Judgment  3. Summary Judgment  ________________ The district court, relying on defendants' summary judgment proffers, found that "[o]n August 18, 1989 Ms. Sanchez herself met with Galanes and agreed to close the second com- plaint, as no further incidents had occurred since May 19, 1989." Nevertheless, at her deposition Sanchez testified that she had made it quite clear to Galanes that she did not want the second complaint closed. See supra p. 4-5. Thus, Sanchez contends that ___ _____ the district court improperly resolved a genuine issue of materi- al fact in awarding summary judgment to defendants.  We agree that it was error to resolve the factual dispute concerning the dismissal of the second complaint adverse- ly to Sanchez at summary judgment. Velez-Gomez, 8 F.3d at 875. ___________ Nevertheless, since the supervisory defendants were entitled to summary judgment as a matter of law in any event, the factual dispute was immaterial, see Antonellis, 80 F.3d at 608, and the ___ __________ error was harmless. The defendant supervisors had warned Santiago to stay away from Sanchez even before the filing of the first formal com- plaint with the EEOO. The EEOO investigated each and every 10 complaint Sanchez filed against Santiago. Following the EEOO investigation of the first formal complaint, Santiago was repri- manded and ordered not to go near Sanchez on PREPA property. Even though Ms. Galanes urged Sanchez to drop the second com- plaint, she did so based on her perception that Santiago had not engaged in any further harassment after having been reprimanded and ordered to keep away from Sanchez following the EEOO's disposition of the first complaint. As a matter of fact, even though it was only after Sanchez filed her third complaint alleging yet further harassment by Santiago that the EEOO learned that the disciplinary action taken in response to the first complaint had failed to produce the anticipated deterrent effect, the EEOO nonetheless took prompt action on the second complaint. EEOO Director Nieves met with Santiago and informed him of the filing of the second formal complaint. Ms. Galanes met with Santiago thereafter, warning him of the consequences of any further harassment, and reminding him that he was not to approach Sanchez at the workplace. After looking into the second Sanchez complaint, the EEOO determined that further action was unneces- _______ sary for the reasons explained by Galanes. See Hegarty, 53 F.3d ___ _______ at 1380 (Sheriff's decision not to discipline deputies, after full investigation, not deliberate indifference despite contrary recommendation by Attorney General's advisory panel). Given the information available to Ms. Galanes in mid- July, her effort to persuade Sanchez to drop the second complaint could not have constituted "encouragement or condonation," let 11 alone conduct which amounted to "deliberate, reckless, or cal- lous" indifference. See Guti rrez-Rodriguez v. Cartagena, 882 ___ ___________________ _________ F.2d at 562 (1st Cir. 1989); see also Febus-Rodriguez v. ___ ____ _______________ Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994); Germany v. _________________ _______ Vance, 868 F.2d 9, 18 (1st Cir. 1989). The conduct of the EEOO _____ in proceeding with the investigation of the second complaint notwithstanding the intervening actions taken against Santiago in connection with the first complaint precluded any supportable finding of "gross negligence" or "reckless and callous indiffer- ence." See Febus-Rodriguez, 14 F.3d at 92 n.4. Since all the ___ _______________ harassment forming the basis for the second complaint had oc- curred prior to the EEOO's disciplinary action on the first complaint, Sanchez failed to generate a trialworthy issue as to whether Ms. Galanes' efforts to persuade Sanchez to drop the second complaint amounted to supervisory action or inaction that reasonably could be characterized as "supervisory encouragement, condonation or acquiescence," or "gross negligence amounting to deliberate indifference." See Lipsett, 864 F.2d at 902.7  ___ _______ The alleged actions and inaction by these defendant- supervisors hardly qualify as a model for administering an  ____________________ 7We pause to emphasize that this is no ordinary hostile 7 environment sexual harassment case. Ordinarily, such claims are presented under the rubric of Title VII, which imposes liability on an employer where the sexual harassment has created a hostile environment, known to the employer, and the employer nonetheless fails to take action variously characterized as "appropriate," "reasonable" or "effectual." See id. at 901. On the other hand, ___ __ Sanchez is left to confront the far more stringent "deliberate indifference" standard applicable under 1983, since her Title VII claims have been dismissed. See supra p. 5. ___ _____ 12 efficient and effective anti-harassment policy. Even overlooking the efforts to discourage Sanchez from pressing the second complaint, their leisurely response to a serious second complaint could create a trialworthy issue given her version of the relevant events and assuming a lack of mitigating explanations  if simple negligence were the applicable standard. But it is not.  Further, we in no sense mean to suggest that a supervi- sor automatically escapes liability by conducting a formal investigation into each harassment complaint and merely deliver- ing a reprimand to the misfeasor even though experience has shown that it will be disregarded. At some point, not reached here, a failure to take prompt and emphatic action could constitute reckless indifference rather than mere laxity. III III CONCLUSION CONCLUSION __________ As the "deliberate indifference" standard for supervi- sory liability has not been met by the evidence proffered against the defendant-supervisors, the district court judgment must be affirmed. The parties shall bear their own costs.  SO ORDERED.  SO ORDERED.  __ _______ 13