Martinello v. Met. P&C Ins. Servs.    CV-96-092-JD    03/04/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Christine Martinello

          v.                              Civil No. 96-92-JD

Metropolitan P&C Insurance
Services, Inc., et al.

                       O R D E R


     The plaintiff, Christine Martinello, brought this action

pursuant to Section 502(a) of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), against the

defendants, Metropolitan P&C Insurance Services, Inc. ("Met P&C")

and Metropolitan Life Insurance Company ("MetLife").  She

contests the denial by MetLife of disability benefits to which

she claims she is entitled as part of a benefit plan offered by

Met P&C, her former employer.  Before the court are the

defendants' motion for summary judgment (document no. 19) and the

defendants' motion to strike extrinsic evidence submitted by the

plaintiff in opposition to the motion for summary judgment

(document no. 24).



                     Background[1]

     In December 1990, the plaintiff began work as a senior

_____

     [1]The court relates all material facts in genuine dispute in
the light most favorable to the plaintiff, the party resisting
summary judgment.  See Sanchez v. Alvarado, 101 F.3d 223, 225 n.1
(1st Cir. 1996).

claims representative for Met P&C. As an employee, she participated in a benefits program called "Metlife Options Plus," for which MetLife is the claims fiduciary. The program entitled her to receive temporary disability payments for twenty six weeks if she was "fully disabled."[2] Under the summary plan description ("SPD")[3] the plaintiff would be "fully disabled" if she was "unable, as determined by [MetLife], due to an illness or injury, to perform any and every duty of [her] regular job." Defs.' Mot. for Summ. J., Ex. A, App. at 15.

In 1994, the plaintiff began to develop symptoms eventually diagnosed by her treating physicians as chronic fatigue syndrome ("CFS").[4] The plaintiff's treatment history near the onset of her alleged disability includes several visits to different physicians. The plaintiff saw Dr. Michael J.P. Lannon, her primary physician, on March 3, March 20, March 29, March 31, April 3, and April 10, 1995. She saw Dr. James E. Snyder, an otolaryngologist, on March 28 and April 3, 1995. The plaintiff

---

[2]The program also entitled the plaintiff to receive permanent disability payments if she was "totally disabled" after the initial six month period.

[3]The court relies on the SPD because the full plan has not been submitted.

[4]The court uses the term "CFS" to refer to the disorder also known as chronic fatigue and immune dysfunction syndrome ("CFIDS"), despite the fact that the plaintiff's recent filings refer to CFIDS, because her initial application for disability benefits was made and denied under the rubric of CFS.

saw Dr. Keith D. Jorgensen, another otolaryngologist, on April 11, May 4, May 16, and June 2, 1995. The plaintiff saw Dr. David J. Itkin, a specialist in CFS, on June 8 and June 22, 1995. The plaintiff saw Dr. Ronald Kulich, a clinical psychologist with experience in diagnosing and treating CFS, on July 25, July 26, and August 30, 1995. The plaintiff considers Dr. Itkin to be her primary treating physician with respect to CFS.

The plaintiff suffers from a number of symptoms, including sleep disturbance, profound fatigue, chronic headaches, tinnitus, sinus congestion, muscle and joint pain, memory loss, sore throat, irritable bowels, night sweats, irregular menses, and anxiety. Her early diagnoses, however, did not include CFS. Dr. Lannon, for example, noted on an early visit that the plaintiff had post nasal drip, suspected that she might have sinusitis, and observed that her symptoms seemed "anxiety based."

Dr. Itkin's notes from June 8, 1995, indicate, in addition to the plaintiff's other symptoms and diagnoses, the following: "It is not possible to give this patient a diagnosis of chronic fatigue syndrome. . . . Even if the patient does have a variant of CFS, which is difficult to exclude at the present time, psychologic factors [are] likely playing a major role in her symptom complex." Id., Ex. B, App. at 150. On June 22, 1995, his notes state: "The patient may have some variant of chronic fatigue syndrome, though it is difficult to make a clean

3

diagnosis of this, especially since anxiety and self admitted depression are also active." Id., Ex. B, App. at 151. In an August 24, 1995, letter, Dr. Itkin reported that the plaintiff "has been given a diagnosis of chronic fatigue syndrome." Id., Ex. B, App. at 160. Dr. Kulich's notes from August 30, 1995, indicated diagnoses of CFS and anxiety disorder. See id., Ex. B, App. at 158.

On June 8, 1995, the plaintiff applied for disability benefits, stating that she had last worked on June 5, 1995, and expected to return to work on July 10, 1995. She began receiving temporary disability benefits. However, because her symptoms continued, the plaintiff did not return to work as she had initially anticipated.

On August 14, 1995, Dr. Robert D. Petrie, an independent consulting physician and specialist in occupational medicine, performed a record review of the plaintiff's case at MetLife's request. Dr. Petrie reviewed all of the plaintiff's medical records submitted to and obtained by MetLife up to that point. Under the job description section, Dr. Petrie indicated that the plaintiff "was employed as a Senior Claims Reviewer . . . . No educational background or formal job description were provided." Id., Ex. B, App. at 207. He concluded that there was "insufficient documentation in the file to show that this claimant is disabled from her previous occupation as a senior

4

claims representative, due to the diagnoses of chronic fatigue syndrome, anxiety disorder, or somatization disorder." Id., Ex. B, App. at 207. He based his opinion on Dr. Itkin's failure to establish the requirements of the case definition of chronic fatigue syndrome outlined by the Center for Disease Control, as evidenced by the following: (1) because the plaintiff had only been out of work for approximately two months, Dr. Petrie reasoned that her level of functioning had not been reduced to below fifty percent of her premorbid activity level for at least six months; and (2) Dr. Itkin had not properly excluded other diagnoses, such as chronic psychiatric disease.

On August 17, 1995, MetLife determined, on the basis of Dr. Petrie's opinion, that the plaintiff was not disabled within the meaning of the benefits policy and thus was not entitled to disability payments. On October 12, 1995, the plaintiff, through counsel, requested that MetLife reconsider its decision to deny disability benefits. The plaintiff enclosed records from visits to Dr. Kulich and an August 24, 1995, letter from Dr. Itkin in support of her request. MetLife again consulted Dr. Petrie, who concluded that the new material presented nothing that would change his prior opinion that the plaintiff did not warrant a diagnosis of CFS. See id., App. at 215-17. Dr. Petrie concluded:

I would suggest that more thorough psychiatric

5

documentation be provided as has been suggested by the attending physician.  In the meantime, there remains insufficient documentation to establish a diagnosis of chronic fatigue syndrome, or any impairment related to that particular disorder.  There is also insufficient documentation to show that the claimant is disabled due to a psychiatric disorder.

Id., App. at 217.  MetLife did not change its opinion that the plaintiff did not qualify for benefits.


## Discussion

The plaintiff initially brought this action, alleging that the denial of benefits was improper, in New Hampshire state court.  On February 16, 1996, the defendants removed the case to federal court.  Subsequently, they filed a motion for summary judgment alleging that the plaintiff has not proffered evidence from which a reasonable fact finder could conclude that MetLife acted arbitrarily and capriciously by denying benefits and that Met P&C is not a proper defendant in this action.  In opposition to the motion for summary judgment, the plaintiff filed documents which the defendants allege were not before MetLife when it made its benefits determination.  The defendants filed a motion to strike this evidence.  The court considers the defendants' motion for summary judgment and motion to strike evidence seriatim.


## I.   Evidence of Arbitrariness or Caprice

The role of summary judgment is "to pierce the boilerplate

of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving [parties are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties seeking summary judgment bear the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

7

When a denial of ERISA plan benefits is challenged under 29 U.S.C. § 1132(a), the denial "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where an ERISA plan grants discretionary authority to an administrator, the court must employ a more deferential "arbitrary and capricious" standard of review. See id.; see also, e.g., Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 836 (1st Cir. 1997); Rodriguez-Abreu v. Chase Manhattan Bank, 986 F.2d 580, 583 (1st Cir. 1993); Curtis v. Noel, 877 F.2d 159, 161 (1st Cir. 1989).[5]

---

[5]When a plan fiduciary is granted discretionary authority but is subject to a conflict of interest, the reviewing court must adjust its "arbitrary and capricious" review to take into account the conflict. See Firestone, 489 U.S. at 115 ("[I]f a benefits plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[] in determining whether there is an abuse of discretion.'") (quoting Restatement (Second) of Trusts § 187, cmt. d (1959)); Schuyler v. Protective Life Ins. Co., No. 92-192-M, slip op. at 9 (D.N.H. Dec. 20, 1994). The plaintiff has urged the court to adjust its standard of review because she alleges that in this case MetLife had a potential conflict of interest due to its financial stake in the outcome. See id. (insurance company's fiduciary role to pay beneficiaries from its own assets in perpetual conflict with its profit-making role as business). The defendants have vehemently opposed such adjustment, alleging, inter alia, that there is no evidence of actual conflict. Because the court is able to resolve the motion for summary judgment within the general framework of the deferential "arbitrary and capricious" standard, however, it need not determine what adjustment, if any, is required in this case.

8

When a court reviews a decision to determine whether it was arbitrary and capricious, it does not consider whether it would have reached a different conclusion but instead whether the decision had a rational basis in the record. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997); Diaz v. Seafarers Int'l Union, 13 F.3d 454, 458 (1st Cir. 1994).

Here the parties agree that the terms of the plan grant MetLife discretion in determining benefits eligibility. They differ over whether that discretion granted to the defendants by the plan properly allowed the defendants to deny the plaintiff's application for disability benefits based solely on the opinion of Dr. Petrie. The plaintiff urges that Dr. Petrie's opinion is deficient in two respects: (1) Dr. Petrie improperly equated the question of the plaintiff's disability under the plan with the question of whether the plaintiff had been properly diagnosed with CFS; and (2) Dr. Petrie could not properly have considered whether the plaintiff met the plan's definition of disability because he did not have before him a description of the requirements of the plaintiff's position. The defendants argue that Dr. Petrie's opinion provides a proper basis from which they could have concluded that the plaintiff was not entitled to disability benefits.

The defendants assert that the plan granted MetLife discretion sufficiently broad that it properly could have

9

required the plaintiff to support her claim for disability by producing evidence that she qualifies for a specific diagnosis. The only case they cite as support for this contention, however, is <u>Michele v. NCR Corp.</u>, a case from the Sixth Circuit reported in a table and not recommended for full publication. <u>See</u> No. 94-3518, 1995 WL 296331, at *3 (6th Cir. May 15, 1995) ("The Plan clearly gives the Administrator the discretion to require a diagnosis of something . . . .").[6] The <u>Michele</u> case involved a plan with a different definition of disability than the one in this case. The plan in <u>Michele</u> provided as follows: "Total disability for the first twelve (12) months of long-term disability means a bodily injury or disease that completely prevents an Employee from performing any and every duty pertaining to his/her occupation." <u>Id.</u> Stripped of modifying clauses, the <u>Michele</u> definition provides that "disability means a bodily injury or disease." <u>Id.</u> Given the focus of this definition on a "disease," the requirement of a specific diagnosis is reasonable.

The core definition of disability in this case, however,

---

[6]The court notes that the Sixth Circuit disfavors the citation of opinions not designated for full publication except in certain circumstances not applicable here. <u>See</u> Sixth Circuit Rule 24(c). Although no local rule prohibits citation of the <u>Michele</u> opinion, the court is reluctant to embrace authority, only persuasive at best, that was not deemed worthy of publication in its Circuit of origin.

10

focuses on functional ability rather than a diagnostic label, and provides that the plaintiff is disabled if "unable . . . to perform any and every duty of [her] regular job." Defs.' Mot. for Summ. J., Ex. A, App. at 15. As the definition makes clear, the proper inquiry is whether the plaintiff is capable of performing the duties of her regular job. Reading into this definition of disability a requirement that a claimant provide conclusive evidence that she meets the requirements for a specific diagnosis would have the effect of precluding some people with profoundly disabling symptoms from receiving benefits. Some serious disorders, such as multiple sclerosis, "cannot be diagnosed with certainty during the life of the patient." Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 266 (1st Cir. 1994).[7] Other diagnoses cannot conclusively be made until the symptoms have persisted for a substantial period of time, such as the six month reduction in activity required for the diagnosis of CFS. Indeed, Dr. Petrie relied on the six month period as a reason for concluding that the plaintiff did not qualify for a diagnosis of CFS. Because the plaintiff was eligible for temporary disability benefits for only twenty-six

---

[7]The court notes that, in a related context, an insurance company can typically deny coverage for a medical condition under a preexisting condition exclusion if the applicant exhibited symptoms of the condition during the exclusionary period even if the applicant did not obtain a specific diagnosis during that period. See, e.g., Hughes, 26 F.3d at 269.

11

weeks (approximately six months), Dr. Petrie's position, advocated by the defendants, would allow them effectively to refrain from ever awarding someone afflicted with the symptoms of CFS temporary disability benefits because the individual could not qualify for the diagnosis until after the period during which the individual was entitled to temporary benefits had expired.

At least one other court has adopted an approach that focuses on clinical findings rather than diagnostic labels. See Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 467 (10th Cir. 1997). As the Gaylor court noted, the plaintiff's treating physicians

> did not use a crystal ball to conclude that [the plaintiff] was disabled; their opinions were based on clinical physical examinations. The verification [of disability] requirement must be treated as evidentiary in nature. Medicine is, at best, an inexact science, and we should not disregard the great weight of the evidence merely because objective laboratory diagnostic findings either are not yet within the state of the art, or are inconclusive.

Id. The court holds that, given the definition of disability in this case, it would be arbitrary and capricious to deny benefits to a claimant merely because she failed to meet the requirements for a specific diagnosis.

This conclusion does not end the court's inquiry. Although Dr. Petrie's opinion focuses on alleged deficiencies in the plaintiff's diagnosis of CFS by the plaintiff's physicians, he also states briefly that the plaintiff has not demonstrated that

12

she is unable to perform the functions of her position.  Such a conclusion, if substantiated, would provide a proper basis for the denial of benefits.  However, Dr. Petrie's cursory conclusion on this subject is fatally undermined by his failure to consider the plaintiff's job description.  In support of her claim that she could not perform the duties of her position as a senior claims representative, the plaintiff submitted the medical opinions of her treating physicians, which were based in part on direct clinical observations.  Without information about what the plaintiff's job required of her, Dr. Petrie lacked any rational basis for disregarding those opinions in their entirety and concluding that the plaintiff was not disabled within the meaning of the plan.

The court concludes that the defendants have not sustained their burden of demonstrating the lack of a genuine issue of material fact on the issue of whether they arbitrarily and capriciously denied the plaintiff temporary disability benefits.  Substitution of the question of whether the plaintiff met the requirements of a specific diagnosis for the question of whether the plaintiff could perform the duties of her position was improper.  The defendants are not entitled to summary judgment on this issue.[8]

---

[8]The defendants have also asserted that the plaintiff's claims in counts II and III are improper.  Although their

13

II.  Met P&C as a Defendant

Met P&C urges that, as the plaintiff's employer, it is not a proper defendant in this action.  The plaintiff's opposition asserts only that Met P&C has not proffered sufficient evidence to justify dismissal of the claims against it.  The proper defendant in an action to recover benefits under an ERISA plan is the plan or plan fiduciary.  See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 232-34 (3d Cir. 1994); Brown v. Continental Baking Co., 891 F. Supp. 238, 240 (E.D. Pa. 1995); Holland v. Bank of America, 673 F. Supp. 1511, 1518 (S.D. Cal. 1987).  Unless the employer exercises discretion, responsibility, or control over the administration of a plan, it is not a proper defendant.  See 29 U.S.C.A. § 1002(21)(A) (West Supp. 1997); Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997); Brown, 891 F. Supp. at 240 n.3; Holland, 673 F. Supp. at 1518.

The record in this case makes it clear that Met P&C was the plaintiff's employer and MetLife was the plan administrator who

---

argument may have merit, it is set forth in a skeletal form in the midst of the defendants' argument on the lack of arbitrariness and caprice in MetLife's benefits denial.  To be sure, the defendants' lack of specificity appears to be a result of the vagueness of the plaintiff's claims, on which she has not chosen to elaborate in her subsequent memoranda.  Nevertheless, the court concludes that the issue has not been raised in a sufficiently detailed manner to allow the court to resolve its merits at this time.

14

made the benefits eligibility determination.[9]  Although there is evidence that Met P&C was affiliated with MetLife, Met P&C has alleged that it played a role in neither the plaintiff's benefits eligibility determination nor the administration of the plan.  It has therefore satisfied its initial burden of demonstrating that it is entitled to summary judgment and shifts the burden to the plaintiff to demonstrate that dismissal of Met P&C as a defendant is improper because it retained discretion, responsibility, or control over the plan.  The plaintiff has adduced no evidence in support of this claim.

Therefore, the court concludes that Met P&C is not a proper defendant in this action and grants the defendants' motion for summary judgment as to Met P&C.

---

[9]MetLife and Met P&C are interrelated corporate entities, a fact which appears to have generated some confusion in this case. In her initial filings, the plaintiff indicates that MetLife was her employer and that Met P&C was the plan administrator. However, the defendants have provided evidence that the plaintiff was employed by Met P&C and that MetLife was the plan administrator.  The plaintiff has not provided any evidence to the contrary, and at present appears to acknowledge the relationship as set forth by the defendants. See, e.g., Pl.'s Mot. for Leave to Amend Compl., ¶ 5 ("On December 26, 1997, Plaintiff received by certified mail a notice from Met Life indicating that Plaintiff was being terminated from her employment at Met P&C, an affiliate of Met Life.").  To the extent the issue remains disputed, the defendants are entitled to summary judgment because the plaintiff has not demonstrated the existence of a genuine issue of material fact requiring a trial.

15

III. Motion to Strike Extrinsic Evidence

The defendants urge that certain evidence submitted by the plaintiff in opposition to the motion for summary judgment is not properly before the court because it was not presented to MetLife when it was evaluating whether the plaintiff was eligible for benefits.  The defendants have moved to strike the following evidence:  the affidavit of the plaintiff; a letter of commendation issued to the plaintiff for her work as a senior claims representative; material from the CFIDS Association of America; a November 19, 1996, letter from Dr. Jack Danielian; a January 20, 1997, letter from Dr. Itkin; and a January 20, 1996, psychological evaluation summary from Dr. Kulich.  The First Circuit has not determined the extent to which information not before a plan administrator may be considered by a court reviewing the denial of benefits by the administrator.  See Recupero, 118 F.3d at 833 ("We have not decided, and need not decide today, whether a court, when reviewing a benefits determination, must restrict itself to the 'record' as considered by the decisionmaker who interpreted the employee benefits plan.").  Because the court has determined that the defendants are not entitled to summary judgment on the merits of the benefits determination and has done so without reference to the material that the defendants have asked the court to strike, the court need not resolve the issue at this time.  Therefore, the

16

court denies the defendants' motion to strike without prejudice to renew the objection, if appropriate, at a later stage in the case.

## Conclusion

For the reasons stated above, the court grants the defendants' motion for summary judgment (document no. 19) as to defendant Met P&C, ending its role as a defendant in the case, and denies the remainder of the motion. The court also denies, without prejudice, the defendants' motion to strike extrinsic evidence submitted by the plaintiff in opposition to the motion for summary judgment (document no. 24). The clerk shall schedule a status conference to be held on March 20, 1998, at 9 a.m.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 4, 1998

cc:  Francis X. Quinn Jr., Esquire
     William D. Pandolph, Esquire

17