### WELLINGTON CONDOMINIUM TRUST, Plaintiff,

v.

### Janet K. PINO, Defendant,

and

### National City Mortgage Company and United States of America, Parties–In–Interest.

### Civil Action No. 08–11197–JGD.

United States District Court, D. Massachusetts.

Jan. 29, 2010.

---

Jeremy R. Bombard, Harmon Law Offices P.C., Needham, MA, Austin L. Furman, U.S. Department of Justice, Washington, DC, Kristin A. Grant, Harmon Law Offices, Newton, MA, for Defendant.

Christopher S.M. Driscoll, Perkins Anctil, P.C., Chelmsford, MA, for Plaintiff.

Janet K. Pino Medford, MA, pro se.

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JUDITH GAIL DEIN, United States Magistrate Judge.

## I. INTRODUCTION

This action is brought by the plaintiff, Wellington Condominium Trust ("WCT"), seeking to establish that the defendant, Janet K. Pino ("Ms. Pino"), a condominium unit owner, owes unpaid common expenses to WCT, and also to establish WCT's first priority lien on the condominium unit in which Ms. Pino resides (the "Property"). In particular, WCT claims that Ms. Pino owes $12,518.99 to WCT in unpaid common area expenses, plus unpaid supplemental assessments, fines and interest, and seeks an additional $3,723.66 in legal fees and expenses. In addition, WCT contends that all or part of its lien takes priority over the

federal tax liens assessed by the United States between 1996 and 2003, and over the first mortgage issued by National City Mortgage Company ("NCMC").

This matter is presently before the court on "Plaintiff's Motion for Summary Judgment" (Docket No. 18) by which WCT is seeking summary judgment in its favor with respect to its claims that Ms. Pino is indebted to WCT, and that its lien takes priority over those asserted by the United States and NCMC. For the reasons detailed herein, WCT's motion is ALLOWED IN PART and DENIED IN PART. This court finds that, when viewing the record in the light most favorable to the non-moving parties, WCT has established that it has a lien on the Property for the full amount owed by Ms. Pino, including attorneys' fees and costs, and that its lien is superior to NCMC's mortgage for six months of condominium fees and legal fees and costs. However, the undisputed facts establish further that, assuming Ms. Pino is the nominee for Mr. Pino, the lien of the United States has priority over WCT's lien.

The plaintiff shall file a Proposed Judgment and Order consistent with the terms of this decision within fourteen (14) days of the date of this decision.

## II.  STATEMENT OF FACTS [1]

The following facts relevant to this court's analysis are undisputed unless otherwise indicated.[2]

WCT is the duly elected Board of Trustees of the Wellington Condominium, acting on behalf of the organization of unit owners of the Wellington Condominium (the "Wellington"). (PF ¶ 1). The Wellington was established by Master Deed dated November 3, 1984 and recorded on December 28, 1984 with the Middlesex South District Registry of the Land Court. (*Id.* ¶ 1; Trustee Aff. Ex. 2 at 1).

Ms. Pino took title to the Property, Unit # III–807 at the Wellington, on November 19, 1997. (Trustee Aff. Ex. 3 at 1). While the United States and WCT agree that Ms. Pino is the record owner of the Property, the United States asserts that Ms. Pino's husband, Nicolas C. Pino ("Mr.

---

1. The facts are derived from (1) "Plaintiff's Memorandum in Support of Motion for Summary Judgment" (Docket No. 19) ("PF"); (2) the "United States' Opposition to the Plaintiff's Statement of the Facts" (Docket No. 21) ("USO") and the exhibits attached thereto ("USO Ex.——") as amended by Docket Nos. 22 & 23; (3) the "Affidavit of Trustee in Regard to Condominium Documents" (Docket No. 17) ("Trustee Aff.") and the exhibits attached thereto ("Trustee Aff. Ex.——"); (4) the "Affidavit of Property Manager" (Docket No. 16) ("Manager Aff.") and the exhibits attached thereto ("Manager Aff. Ex.——"); and (5) the notice letters ("NL") plaintiff delivered, which are included in Exhibit A to plaintiff's "Amended Complaint," which is attached to the "United States' Notice of Removal to the United States District Court for the District of Massachusetts" (Docket No. 1).

2. Because neither Ms. Pino nor NCMC have submitted an opposition to WCT's motion for

summary judgment against them, and neither has contested WCT's statement of facts in support of its motion, the court accepts as true the facts set forth in WCT's statement to the extent such facts have not been disputed by the United States. See L.R. 56.1 (material facts set forth in moving party's statement of material facts and not controverted by opposing party deemed to be admitted). Nevertheless, the court has decided the motion for summary judgment on its merits, and, in so doing, viewed the record in the light most favorable to the non-moving parties. *See Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19, 25 (1st Cir.2006) (even where moving party's motion for summary judgment is unopposed and its factual assertions are uncontroverted, district court is obliged to consider the motion on its merits and to view the record in the light most favorable to the non-moving party).

Pino"), is the true owner of the Property because he has lived there since the Property was purchased, he pays the bills and handles the finances for the Property, he fully paid the initial mortgage that funded the purchase of the Property, and Ms. Pino has not made any payments of household or mortgage expenses. (USO ¶¶ 2, 8). After the original mortgage used to purchase the Property was paid off in May 1999, a new mortgage on the Property, held by NCMC, was recorded on June 23, 2004. (USO Ex. N at 47; PF ¶ 5).

After taking title to the Property, Ms. Pino failed to pay the condominium expenses assessed by WCT, and as of January 30, 2009, owed $12,518.99 in common area charges and late fees. (PF ¶ 3; Manager Aff. ¶ 5). In addition, Mr. Pino is indebted to the United States for unpaid federal income and employment taxes plus statutory accruals, in the total amount of $213,058.59, plus interest accruing thereon after January 15, 2009. (USO ¶ 4). In connection with these tax obligations, on May 10, 2004 the United States filed three Notices of Federal Tax Lien for Ms. Pino with the Registry of Deeds for Southern Middlesex County, and an additional two Notices of Federal Tax Lien were refiled with the Registry for Ms. Pino on July 11, 2006. (USO ¶ 4).

Additional facts will be provided below where appropriate.

### III. *ANALYSIS*

### A. *Summary Judgment Standard of Review*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." *Id.* (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *See id.* at 324, 106 S.Ct. at 2553. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." *Walsh v. Town of Lakeville*, 431 F.Supp.2d 134, 143 (D.Mass.2006).

### B. *WCT's Claim Against Ms. Pino*

■ "The financial obligations of a unit owner," including the obligation to pay common expenses assessed by a condominium association are established by Mass.

Gen. Laws ch. 183A, §§ 6, 7 and "are covenants running with the land." *Trustees of the Prince Condominium Trust v. Prosser*, 412 Mass. 723, 725, 592 N.E.2d 1301, 1302 (1992) (holding that "there is no right to a set-off against a lawfully imposed condominium charge"). "[A] condominium unit owner may not decline to pay lawful assessments. If there were to be an exception to this principle, it would be due to extraordinary circumstances...." *Id.* at 726, 592 N.E.2d at 1302. Even where a common assessment is wrongfully made, "absent a prior judicial determination of illegality, a unit owner must pay its share of the assessed common expenses." *Blood v. Edgar's, Inc.*, 36 Mass.App.Ct. 402, 405, 632 N.E.2d 419, 421 (1994). Here, it is undisputed that Ms. Pino has failed to pay condominium fees and assessments for her unit. (PF ¶ 3; Manager Aff. ¶ 5). As Ms. Pino has not even attempted to support or explain her failure to pay, much less establish any "extraordinary circumstances" which would excuse her payment, WCT's motion for summary judgment is allowed with respect to its claim for unpaid assessments and associated interest and late fees.

■ WCT also seeks legal fees pursuant to Mass. Gen. Laws ch. 183A, § 6(a)(ii), which states:

> If any expense is incurred by the organization of unit owners as a result of [a] unit owner's failure to abide by the requirements of this chapter ... the organization of unit owners may also assess any fees, attorney's fees charges, late charges, fines, costs of collection and enforcement, court costs, and interest charged pursuant to this chapter against the unit owner....

However, "[t]he Trustees' entitlement to attorneys fees, and their inclusion in any lien, is subject to the limitation that they must be reasonable." *Bd. of Trs. of 87 St.*

*Botolph St. Condo. Trust v. Cohen*, No. 061829E, 2007 WL 3261301 at *4 (Mass.Super. July 2, 2007) (holding that unit owner was liable for reasonable attorney fees incurred in imposing lien for unpaid association fees) (quoting *Trustees of Whitehall Condo. Trust v. Wilson*, No. 010650, 2002 WL 31421758, at *2 (Mass.Super. Jan. 28, 2002)). Here, WCT's attorneys have submitted an affidavit (Docket No. 15) stating that they have worked 4.84 hours at a rate of $125 an hour, have completed $1,675 worth of work for a flat fee and have incurred expenses of $893.66 through the motion for summary judgment. This court finds that the full amount requested—$3,723.66—is reasonable for attorneys' fees and expenses to collect the unpaid common area charges that are the subject of this litigation, and that Ms. Pino is liable for such amount.

## C. *Ownership of the Condominium*

■ The federal tax lien asserted by the United States arises out of Mr. Pino's tax obligations. Therefore, as the United States acknowledges, its interest in the Property is premised on a finding that Ms. Pino is the "nominee" of Mr. Pino with respect to the Property. "[V]esting formal title to a taxpayer's property in the taxpayer's ... nominee will not place the property outside the reach of a [federal tax] lien." *Cody v. United States*, 348 F.Supp.2d 682, 694 (E.D.Va.2004). The parties agree that the question of Ms. Pino's status as a nominee does not need to be finally decided in the context of the present motion. The United States has submitted sufficient evidence to establish a strong likelihood that Ms. Pino is the nominee owner of the Property.

In order to determine whether the owner of a property is a nominee, a court may consider any of the following factors:

(1) whether the taxpayer expended personal funds for the property; (2) whether inadequate or no consideration was paid by the alleged nominee; (3) whether the property was placed in the alleged nominee's name in anticipation of a lawsuit or other liability; (4) whether the taxpayer enjoys the benefits of, retains possession of, and exercises dominion and control over the property; (5) whether a close family relationship exists between the taxpayer and the alleged nominee; (6) whether conveyances between the taxpayer and alleged nominee were recorded; and (7) whether the alleged nominee interferes with the taxpayer's use of the property.

*Id.* at 694–95 (holding that owner of townhouse was nominee of relative and therefore lien on property by IRS was proper). Based on the factors listed above, there are facts in the record that support the conclusion that Ms. Pino holds the Property as the nominee of Mr. Pino, including, without limitation, their marital status, and the fact that Mr. Pino resides at the Property, purchased the Property and is responsible for paying the bills of the Property. Consequently, the court will assume that Ms. Pino is Mr. Pino's nominee for purposes of assessing the priority of the liens at issue.

### D. *Respective Lien Priorities*

Assuming that Ms. Pino is the nominee of Mr. Pino, the relevant facts are not in dispute. As detailed below, this court finds that the liens of the United States have priority over WCT's liens, and WCT's liens for six months of common area fees and attorneys' fees and costs have priority over NCMC's mortgage.

### *Priority of WCT's Lien with Respect to the Tax Liens*

WCT's lien is created by Massachusetts state law, which provides, in relevant part,

that "the organization of condominium unit holders," here, WCT, "shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due" and that "recording of the master deed constitutes record notice and perfection of this lien; no further recordation of any claim of lien for assessment under this section is required." Mass. Gen. Laws ch. 183A, §§ 6(a)(i) and (c). WCT fulfilled the requirements of the Massachusetts statute and created a lien on the Property for unpaid common expenses when it properly recorded its Master Deed.

The Government's tax lien is created by I.R.C. § 6321, which provides that a lien in favor of the United States is created in the amount of any unpaid taxes upon all property of any person who "neglects or refuses" to pay taxes. A federal tax lien is protected against a subsequent "purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" once the lien is filed in the office designated by the laws of the state in which the property is located. *See* I.R.C. §§ 6323(a) and (f). By filing its tax liens on May 10, 2004 against Ms. Pino in the Registry of Deeds for Southern Middlesex County, the United States became protected against subsequent lienors as described by I.R.C. § 6323. It is undisputed that WTC is the holder of a security interest under § 6323. *See U.S. v. Bromberg,* No. 06–80246–CIV, 2007 WL 1201454, at *5 (S.D.Fla. April 23, 2007) (addressing whether condominium association seeking to recover unpaid assessments was a "holder of a security interest" in the property at the time federal tax liens were filed). The issue presented here is whether WTC held that status at the time the United States filed its tax liens. For the reasons detailed herein, this court finds that it did not.

When there are competing claims between a federal tax lien, and a state law lien, such as in the present case, federal law determines the priority of the parties.[3] *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). In general, "priority for purposes of federal law is governed by the common law principle that 'the first in time is the first in right.'" *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993) (quoting *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)). It is well established that a state lien competing with a federal tax lien is deemed to be "in existence for 'first in time' purposes only when it has been 'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *McDermott,* 507 U.S. at 449–50, 113 S.Ct. at 1528 (emphasis omitted) (quoting *New Britain,* 347 U.S. at 84, 74 S.Ct. at 369). Phrased another way, "[c]hoate state-created liens take priority over later federal tax liens, while inchoate liens do not." *United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963) (internal citations omitted). Therefore, to have priority over the tax liens, WCT must have established a choate, perfected, security interest in the Property before the United States filed its tax liens.

In arguing that its lien takes priority over that of the United States, WCT relies on the fact that under Massachusetts law, its lien was perfected in 1984 when it filed the Master Deed, whereas the United States did not perfect its claim until 2004. However, in order for a lien to be choate under federal law, the amount of

the lien has to have been determined. *See id.* at 90, 83 S.Ct. at 1656 (where amount of attorneys' fees incurred in connection with foreclosure was not fixed until foreclosure decree entered, fees were inchoate until then, and were subordinate to previously filed federal tax lien). At the time the Master Deed was filed in 1984, the amounts due were not ascertainable because they had not become due. While the 1984 filing serves to establish both the identity of the lienor (WCT) and the property subject to the lien (the Property), the amount of the lien was undetermined as of that time. Because the lien amount remained uncertain at the time the United States filed its liens, WCT's lien was inchoate. *See In re Henderson,* 155 B.R. 10, 12 (Bankr.S.D.Ca.1993) (holding that condominium association's lien as to future unpaid dues was inchoate because amount of lien was impossible to ascertain); *Bromberg,* 2007 WL 1201454, at *5 (holding that federal tax lien takes priority over the lien of condominium association where the amount of the association's lien was not "established prior to the filing of the federal tax lien"). Because WCT's lien was inchoate at the time the United States filed its lien, the tax lien is first in time and takes priority.

### Priority of WCT's Lien with Respect to the Lien of NCMC

Mass. Gen. Laws ch. 183A, § 6(c) provides, in relevant part, that:

A lien under this section ... is prior to all other liens and encumbrances on a unit except ... (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent ... This lien is also *prior to the mortgages described*

---

3. WCT has argued that some of the cases on which the Government relies are not relevant since the laws of the states at issue differ from

Massachusetts law. However, these differences are not controlling since federal law governs the issue of the priority of liens.

124

*in clause (ii) above to the extent of the common expense assessments ... which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien and to the extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien ...* The priority amount shall not include any amounts attributable to special assessments, late charges, fines, penalties, and interest assessed by the organization of unit owners ... Recording of the master deed constitutes record notice and perfection of this lien; no further recordation of any claim of lien for assessment under this section is required.

(Emphasis added). It is undisputed that WCT sent NCMC all appropriate notice as required to enforce this six-month priority. *See id.;* NL at 1–4. Therefore, this court finds that WCT's lien has priority over NCMC's mortgage to the extent of six months of common area fees and WCT's reasonable attorneys' fees and costs of $3,723.66.

## IV. CONCLUSION

For all the reasons detailed herein, WCT's motion for summary judgment (Docket No. 19) is ALLOWED IN PART and DENIED IN PART. WCT has established that it has a lien on the Property for the full amount owed by Ms. Pino, including attorneys' fees and costs, and that its lien is superior to NCMC's mortgage for six months of condominium fees and legal fees and costs. However, assuming Ms. Pino is the nominee for Mr. Pino, the lien of the United States has priority over WCT's lien.

The plaintiff shall file a Proposed Judgment and Order consistent with the terms of this decision within fourteen (14) days of the date of this decision.