**Lamont J. GRISWOLD, Plaintiff,**

v.

**Brian D. MORGAN, Defendant.**

**No. 99–CV–6654L.**

United States District Court,
W.D. New York.

Jan. 28, 2004.

---

Lamont J. Griswold, Marcy, NY, pro se.

George G. Mackey, Hiscock & Barclay LLP, Rochester, NY, for Plaintiff.

Mitchell J. Banas, Jr., Jaeckle Fleischmann & Mugel LLP, Darren Longo, Office of the New York State Attorney General, Buffalo, NY, Kelly Ann McCarthy, Office of the New York State Attorney General, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Lamont Griswold, appearing *pro se,* commenced this action under 42 U.S.C. § 1983. Griswold, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his rights under the Eighth Amendment to the United States Constitution were violated through deliberate indifference to his serious medical needs from 1990 to 1997. Complaint ¶ 1. The relief sought in the complaint is $4.5 million in compensatory and punitive damages. Complaint ¶ 61.

Several defendants have already been dismissed by prior orders of this Court. The two remaining defendants, Drs. Brian Morgan and Hasmukh Choksey, have moved for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA" or "the Act"), 42 U.S.C. § 1997e(a), and that his claims are time-barred.

## DISCUSSION

### I. Failure to Exhaust

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such admin-

istrative remedies as are available are exhausted." A failure to exhaust such remedies will generally preclude an inmate from seeking relief pursuant to 42 U.S.C. § 1983 in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir.2001); *Peoples v. Beldock*, 212 F.Supp.2d 141, 142 (W.D.N.Y. 2002).

New York State regulations provide for a three-step administrative review process. First, the "inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ...." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review. If the IGRC's decision is appealed, the inmate may appeal to the superintendent of the facility, and if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7.

In the case at bar, plaintiff states that he grieved his claim on August 25, 1998. Complaint ¶ 64 and Ex. A. On September 3, 1998, the IGRC issued a response stating, "Refer to the superintendent that competent medical attention be given." Complaint Ex. A.

On September 23, 1998, the Superintendent issued a decision stating in part that "[u]pon review of this grievance, the investigation and the IGRC response, this grievance is accepted only to the extent that Grievant has and is receiving competent medical treatment." Complaint Ex. B. With respect to the particular acts and omissions forming the basis for the grievance, however, the Superintendent stated that the grievance was "inappropriate" and "untimely since the whole matter surrounds a time frame from 1993 to February 1998 [1]," *i.e.,* more than fourteen days before the grievance was filed.

On appeal, however, CORC stated that it sustain[ed] the Superintendent, *in part,* i.e.:

> Upon review of this grievance, the investigation and the IGRC response, this grievance is accepted only to the extent that Grievant has and is receiving competent medical treatment....... Further, the action requested is not within the bounds of this program which is designed to resolve problems, not compensate individuals.

Complaint Ex. C (emphasis added). CORC then went on to find that: Griswold "was appropriately treated for his complaints and symptoms, based on professional medical judgment"; although Griswold was advised to stick to a low-fat, low-cholesterol, low-sodium diet, which was available to him on request, "he does not ask for it"; and Griswold "must assume some responsibility for his own health and is encouraged to comply with his prescribed treatment regimen." CORC's decision said nothing at all about the timeliness of plaintiff's grievance.

Accepting, *arguendo,* the correctness of defendants' assertion that a grievance that is rejected as untimely will not satisfy the PLRA's exhaustion requirement, *see, e.g., Scott v. Gardner,* 287 F.Supp.2d 477, 489 (S.D.N.Y.2003), I do not believe that such a rule should be applied in the case at bar. Contrary to defendants' contention, CORC did not "address[ ] only that portion of the grievance that was timely." Defendants' Memorandum of Law at 9. CORC's statement that Griswold "was appropriately treated" was not qualified, temporally or otherwise. CORC's further observation that plaintiff's "heart disease was the result of numerous factors extending over a period of years" further suggests that

---

1. The events in 1998 do not relate to plaintiff's claims against Morgan and Choksey.

CORC's findings were not limited to whether plaintiff was receiving adequate treatment at the present time, but whether he had received adequate treatment in the past.

In addition, notably absent from CORC's decision was any reference to whether the grievance was untimely. That, plus CORC's statement that "CORC sustains the Superintendent, *in part*" (emphasis added), strongly suggests that CORC chose not to rely on untimeliness as a ground for its decision, but instead decided the grievance solely on the merits.

Under these circumstances, I believe that the apparent untimeliness of plaintiff's grievance does not mean that plaintiff has failed to satisfy the PLRA's exhaustion requirement. In the analogous context of habeas corpus cases, the rule is that "if the last state court to be presented with a particular federal claim reaches the merits," any procedural bar is removed. *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *see also Tokar v. Bowersox,* 198 F.3d 1039, 1047 n. 8 (8th Cir.1999) ("if a state court ignores a potential procedural bar and reaches the merits of a prisoner's claim, the federal habeas courts may consider the claim") (citing *Shaddy v. Clarke,* 890 F.2d 1016, 1018 (8th Cir.1989)), *cert. denied,* 531 U.S. 886, 121 S.Ct. 204, 148 L.Ed.2d 143 (2000); *cf. Rivera v. Goord,* 253 F.Supp.2d 735, 749–50 (S.D.N.Y.2003) (finding failure to exhaust in § 1983 case, and noting that "[a]lthough DOCS rejected the grievance, it did so solely on a technical basis-the 'grievance' was untimely and … DOCS did *not* consider the 'grievance' on the merits") (emphasis added).

■ Defendants point out that, in his affidavit in opposition to defendants' motion, plaintiff states,

> The statement I made on the grievance I filed regarding inadequate medical treatment was made to explain why I was requesting compensation. I did not intend for this to be taken as a complaint for years of inadequate medical treatment. My action requested clarifies this where I state: That the facility provide competent medical treatment and that I be compensated.... It is clear that my intent was for future competent medical care, and for compensation. I do not why [sic] the response contains assertions that the grievance is untimely as I did not request a "past" remedy. I timely exhausted my only available remedy.

Docket # 56, ¶ 21. Defendants argue from this that plaintiff admits that in his grievance filed August 25, 1998, plaintiff did not grieve any medical treatment before that date, and that he has therefore failed to exhaust as to his claims in this action, since they all relate to treatment prior to 1998.

■ Although I understand defendants' reasoning, I conclude that, plaintiff's statements in his affidavit notwithstanding, plaintiff's grievance did not seek *only* prospective relief, but also related to, and sought compensation for, *past* inadequate medical care.[2] Plaintiff's specific request was "[t]hat the facility provide competent medical treatment and that [he] be compensated for the *damage done to me* through negligence, medical malpractice and deliberate indifference to serious medical needs." Complaint Ex. A (emphasis added). Accompanying the grievance was a statement by plaintiff setting forth his

---

**2.** The fact that New York's inmate grievance process may not have provided for the availability of an award of money damages does not alter the fact that plaintiff did request "compensation" for past constitutional violations.

allegations of deliberate indifference by Drs. Morgan and Choksey "from August 1993 to October 1997 . . . ." *Id.*

Mindful of the Court's obligation to construe *pro se* civil rights litigants' pleadings and other papers liberally, *see Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.2002); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001), I am not inclined to hold that plaintiff's grievance was concerned solely with future events or prospective relief. Although his affidavit might be read to suggest otherwise, it is at least equally likely that plaintiff's statement that he "did not request a 'past' remedy" was simply intended to rebut defendants' assertions that the Superintendent properly rejected Griswold's grievance as untimely. Plaintiff is not an attorney, and I do not believe that it would be consonant with this Court's duty to "read[ his] submissions to raise the strongest arguments they suggest," *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir.2003), for the Court to rule that plaintiff has fallen into a trap that he unwittingly set for himself.

Furthermore, I again note that CORC itself does not appear to have construed plaintiff's grievance as only concerned with prospective relief. CORC did not simply find that plaintiff was *then* receiving adequate care, but that he *had* received such care in the past.

## II. Statute of Limitations

■ A three-year statute of limitations, derived from New York's general personal injury statute of limitations, is applied to § 1983 actions brought in New York. *See Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Paige v. Police Dept. of City of Schenectady*, 264 F.3d 197, 199 n. 2 (2d Cir.2001). Defendants argue that to the extent that plaintiff's claims arise out of events that occurred more than three years before the filing of the complaint in this action, his claims are time-barred.

Defendants concede, however, that under the "continuing violation" doctrine, otherwise untimely claims may not be time-barred if the plaintiff can show that the claims arise out of unlawful acts that form part of an ongoing policy, provided that the plaintiff can also show "some non-time-barred acts taken in furtherance of that policy." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999). Defendants also acknowledge that there is authority that this doctrine, which is typically applied in discrimination actions, may also be applied to § 1983 actions. *See also Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir.1995) (finding inmate's deliberate-indifference claims under § 1983 to be time-barred where plaintiff had "alleged no facts indicating a continuous or ongoing violation of his constitutional rights"); *Cole v. Miraflor*, No. 99 CIV 0977, 2001 WL 138765, at *6 (S.D.N.Y. Feb. 19, 2001) (applying doctrine to deliberate-indifference claims).

Defendants claim that the doctrine cannot apply here because the non-time-barred claims must be dismissed for failure to exhaust. But, I have rejected defendant's failure-to-exhaust arguments, and I am not prepared to rule at this time that plaintiff cannot rely on the continuing-violation doctrine.

■ At the same time, however, I do not hold that plaintiff *can* invoke that doctrine, or that none of his claims are time-barred. Plaintiff does allege a long series of events concerning his treatment by defendants, but that alone does not necessarily establish a continuing violation. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) ("multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation"), *cert. denied*, 511 U.S. 1052, 114

S.Ct. 1612, 128 L.Ed.2d 339 (1994). In addition, the precise parameters of the continuing-violation doctrine in this circuit are unclear in the wake of the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even where they are related to acts alleged in timely filed charges"); *see Burrowes v. Brookdale Hosp. and Med. Ctr.,* 66 Fed. Appx. 229, 231, 2003 WL 1240609 (2d Cir. 2003) (leaving open question of whether "any part of the continuing violation doctrine survives *Morgan* ").[3]

At any rate, the parties have not addressed these issues, and I decline to decide at this juncture whether plaintiff has alleged sufficient facts to allow him to rely upon the continuing-violation doctrine. I do note, though, that even if some of plaintiff's claims are time-barred, evidence surrounding those matters may be relevant evidence at trial concerning the surviving claim (or claims). This seems especially so in this case where plaintiff alleges a long history of neglect relating to his one medical condition—plaintiff's heart condition. These, though, are matters for another day.

### CONCLUSION

Defendants' motion for summary judgment (Docket # 45) is denied.

IT IS SO ORDERED.

---

**3.** Although lacking precedential authority, *Burrowes* is cited only to show that the Court of Appeals for the Second Circuit has *not* decided how much, if any, of the doctrine survives *Morgan.*