Andrew MALLORY, Plaintiff,

v.

John MARSHALL, et al., Defendants.

Civil Action No. 07–10336–NMG.

United States District Court,
D. Massachusetts.

Sept. 22, 2009.

Andrew Mallory, South Walpole, MA, pro se.

Stephen G. Dietrick, MA Department of Correction, Boston, MA, for Defendants.

## ORDER

NATHANIEL M. GORTON, District Judge.

After consideration of plaintiff's objections thereto, Report and Recommendation is accepted and adopted. Action on motion: Defendants motion for summary judgment is allowed.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

The plaintiff, Andrew Mallory ("Mallory"), is presently incarcerated at MCI Ce-

dar Junction ("CJ"). He has brought this *pro se* action against the former Superintendent of CJ, John Marshall ("Marshall"), the Director of Food Services at CJ, Steve Toomey ("Toomey"), a correction officer cook at CJ, Nick Kenney ("Kenney"), and a correction officer serving as storehouse officer at CJ, Mark Simmons ("Simmons" and collectively with Marshall, Toomey and Kenney, the "Defendants"). By his complaint, Mallory is challenging the Defendants failure to prevent an unprovoked attack on Mallory by Trevor Higgins ("Higgins"), another inmate at CJ. Mallory contends that the Defendants are liable under 42 U.S.C. § 1983 for alleged violations of (1) his Eighth Amendment rights by their deliberate indifference to his safety and welfare, (2) his right to rehabilitation under Mass. Gen. Laws ch. 124, § 1(f), and (3) his right to be treated in accordance with his good conduct under Mass. Gen. Laws ch. 127, § 32. This matter is presently before the court on the Defendants' Motion for Summary Judgment (Docket No. 30) pursuant to which the Defendants are seeking judgment in their favor on all counts of the Complaint. Because the undisputed facts establish that the Defendants are entitled to judgment as a matter of law, and for the reasons detailed more fully herein, this court recommends to the District Judge to whom this case is assigned that the Defendants' Motion for Summary Judgment be ALLOWED.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." *Id.* (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *See id.* at 324, 106 S.Ct. at 2553. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). Similarly, "conclusory responses unsupported by evidence" are insufficient to defeat a motion for summary judgment. *Griggs–Ryan v. Connelly,* 904 F.2d 112, 114 (1st Cir.1990). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." *Walsh v. Town of Lakeville,* 431 F.Supp.2d 134, 143 (D.Mass.2006).

In the instant case, the Defendants accept Mallory's allegations of fact as true

for purposes of this motion. Nevertheless, the undisputed material facts establish that the Defendants are entitled to judgment as a matter of law. Therefore, this court recommends that the Defendants' motion for summary judgment be allowed.

### III. STATEMENT OF FACTS [1]

On June 11, 2006, Mallory was working in CJ's kitchen preparing meals for CJ staff when inmate Higgins entered the staff kitchen area and allegedly stated "all the food in this kitchen belongs to us inmates, and I'll take what the fuck I want!" (Compl. ¶ 9(b)). Higgins was ordered out of the staff kitchen area by Kenney who locked the door to the area. (Id. ¶ 9(e)). Kenney allegedly asked Mallory what Higgins' problem was, and Mallory replied that he thought Higgins had serious mental health issues and that he tried to avoid him. (Id. ¶ 9(f)). Mallory claims that Simmons, the Security Officer for the area, was not present during this time. (Id. ¶ 9(c-e)).

Approximately 20 minutes after this incident, Mallory claims Simmons returned to the kitchen area. (Id. ¶ 9(g)). Mallory requested and was granted permission from Simmons to leave the kitchen and return to his cell to watch a sports program. (Id.). Mallory left the staff kitchen and waited in the main prison kitchen for Simmons, who was speaking with Kenney. (Id. ¶ 9(h)). While in the main prison kitchen, Higgins approached Mallory and allegedly asked "hey! You got a problem with me?" to which Mallory replied "no, I don't have a problem with you." (Id. ¶ 9(i)). Mallory watched Higgins walk to a large kettle used to cook oil and butter 12–

15 feet away. (Id. ¶ 9(j-k)). While Mallory was still waiting for Simmons, Higgins walked up behind Mallory and dumped 30 pounds of heated butter and cooking oil onto Mallory's head and shoulders. (Id. ¶ 9(l)). Mallory implies that Higgins' attack may have been racially motivated as Mallory is Caucasian whereas Higgins is African American. (Id. ¶¶ 9(b) and (d)).

The Defendants claim that officers, including but not limited to, some of the Defendants, responded immediately to this assault. (See Simmons Aff. ¶ 20; Kenney Aff. ¶ 29). In particular, but without limitation, Kenney asserts that he ordered the inmates to stop fighting and grabbed Higgins' arm, at which point Kenney was punched in the face by a different inmate. (Kenney Aff. ¶ 29). For his part, Mallory contends that there are disputed facts as to the speed with which the officers responded. According to the Inner Control Room Log (Pl. Ex. 9), the assault was recorded as beginning at 2:48 p.m., while Kenney wrote in the Incident Report and Disciplinary Report that the assault began at 3:10 p.m. (Id.) Mallory contends that this shows that it took Kenney 22 minutes to acknowledge the fight and attempt to break it up, raising a jury question as to whether the Defendants were deliberately indifferent to his safety. (See Pl. Opp. (Docket No. 49) at 4–5). However, Mallory, the victim of the assault, has not asserted that he did not receive prompt attention from the prison staff after the unprovoked attack. As detailed below, the record does not support Mallory's claim that there are material facts in dispute.

---

1. The facts are derived from the Verified Complaint (Docket No. 1) ("Compl."), Defendants' Statement of Undisputed Facts as found in their Memorandum (Docket No. 31) ("DF"), the affidavits of each defendant attached to their Motion for Summary Judgement (Docket No. 30) ("—— Aff."), the Plaintiff's Affidavit in opposition to the motion for summary judgment (Docket No. ——) ("Pl. Aff.") and the Exhibits thereto ("Pl. Ex.").

Mallory was immediately transported to Massachusetts General Hospital suffering from 2nd and 3rd degree burns to the head and shoulder area. (Compl. ¶ 9(*l* )). This has left Mallory with disfiguring scarring to these areas, as well as hair loss, irritation to his right eye, paranoia and difficulty sleeping. (*Id.* ¶ 40). Mallory claims these injuries have left him unable to read or write for any sustained period and unable to attend or benefit from educational or vocational classes offered by the prison and which could have resulted in earned good time credits. (*Id.*).

Mallory contends that before this incident there had been incidents of violence in the prison kitchen, including fights between inmates. (Pl. Ex. 10).[2] In addition, Mallory asserts that prior to this incident Higgins had a history of disruptive behavior in prison. (Pl. Aff. ¶¶ 7–8; Pl. Ex. 6). In the disciplinary report stemming from this incident, the special hearing officer noted that Higgins had previously been issued over 25 disciplinary reports. (Pl. Ex. 3 at p. 4). These infractions have included fighting with inmates utilizing weapons such as prison yard rocks, assaulting staff, refusing orders, setting fire, being involved with group demonstrations, and general disruptive behavior. (*Id.*). The Defendants point to the fact, however, that prior to his attack on Mallory in June 2006, the last time Higgins was disciplined for violence was on January 10, 2005, when he assaulted a prison staff member. (Pl. Aff.¶ 7). In addition, Higgins had been employed in the kitchen since November 28, 2005. (Toomey Aff. ¶ 7). Thus, Mallory and Higgins had worked together in the kitchen without incident from at least November 28, 2005 until June 11, 2006. (*Id.*).

### The Grievance Procedure

The Department of Correction ("DOC") has an administrative grievance procedure for resolving inmate issues found at 103 C.M.R. 491 *et seq.* Inmates may submit written grievances which are reviewed by an Institutional Grievance Coordinator ("IGC"). 103 C.M.R. 491.10(1). All grievances must contain a brief statement of facts. 103 C.M.R. 491.09(2)(D). The IGC must provide a written explanation of the proposed resolution or the reasons for the denial of the grievance. 103 C.M.R. 491.10(1)(F). Grievances must be filed within ten working days of the actual incident or of the inmate's becoming aware of the incident. 103 C.M.R. 491.08(4). This time period may be enlarged for another ten days for cause. 103 C.M.R. 491.18. Failure to comply with these time restrictions terminates the grievance process unless the untimeliness is waived. 103 C.M.R. 491.19. If the grievance is denied, the inmate may appeal the denial by filing a designated form within 10 days of the denial. 103 C.M.R. 491.12(1).

Mallory's injuries occurred on June 11, 2006. Mallory submitted grievance # 20606 on August 20, 2006, requesting $10 million dollars or a reasonable settlement offer for the harm he had suffered.[3] Mallory's grievance was thus filed outside of the 10 day window required by 103 C.M.R. 491.08(4). In his grievance, Mallory did not allege any wrongdoing by any of the Defendants nor did he raise any of the

2. The records submitted by Mallory indicate that in a little more than a year prior to the incident, from April 24, 2005 through May 19, 2006, there were five fights in the kitchen area which were easily handled by the prison staff. (Pl. Ex. 10). Mallory also has submitted evidence of other complaints he has about the prison area, including problems with the food and staffing. (Pl. Exs. 10A & 10B).

3. Copies of the August 20, 2006 grievance, Mallory's August 25, 2006 appeal, and the denials by the reviewing officers are attached to the Complaint.

legal claims that form the basis for this suit. Rather he wrote:

I have just become aware that in order to state a claim of damages for the (unprevoked) attempt on my life. I must seek remedy through InstGrievance. As a result of this attack, I am left permanently scarred as follows: 1.) Physically, [burn scars & hairless]: Right-side scalp 30 to 40% hair loss. Right-side scalp, right-sideburn, right-ear, right-shoulder, right-arm and back, all exhibit burn scarring. 2.) Mentally & Emotionally: My continuing inability to sleep soundly [post attack], due to nightly/anxiety attacks.

I request "monetary damages" in the amount of $10–million dollars, or a reasonable settlement offer, for the above stated attempt on my life and subsequent scarring and suffering inflicted upon my person.

This grievance was denied on August 24, 2006 by the IGC. The grounds given were:

This matter is being investigated and the appropriate action will be taken. Should you need to seek medical and/or mental health for your claims and allegations of burns and anxiety attacks you may submit a sick slip.

The denial does not mention that the grievance had not been timely filed. Mallory appealed this denial on August 25, 2006. In his appeal, Mallory repeated his claim for damages. Mallory again did not identify the defendants, but he did allege a violation of his civil rights under *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), by the DOC. As he wrote:

I am appealing Grievance # 20606 because everything the IGC states in his denial response has already been done. This matter is already investigated and before criminal court. Further, upon incident, I was transported to Boston

Medical (assessment) Mass General (primary and stabilization treatment 2–days) Lemuel Shattuck (after care 2 days) and SBCC infirmary (after care 1–week). Moreover I have been and continue to avail myself of the Mental Health Dept. This assault and attempt of my life with no obligated protection by the DOC is clearly violation of the *Farmer v. Brennan*, 511 U.S. 825 [114 S.Ct. 1970] standards in which security has the constitutional duty and obligation to secure my health and welfare. Therefore my position remains in that a settlement is appropriate.

This appeal was denied by the reviewing Superintendent stating simply: "I concur with the IGC."

Additional facts will be provided below where appropriate.

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

The Defendants have moved for summary judgment on the grounds that Mallory has not exhausted his administrative remedies by (1) failing to timely file a grievance as required by 103 C.M.R. 491.08(4) and (2) by not properly identifying the Defendants and each of his legal claims in his grievance. (Defs' Mem. (Docket No. 31) at 6–8). For the reasons detailed herein, these arguments are without merit.

 Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Porter v. Nussle*, 534 U.S. 516, 519–20, 122

S.Ct. 983, 985–86, 152 L.Ed.2d 12 (2002) (quoting 42 U.S.C. § 1997e(a)). Thus, exhaustion is mandatory and requires an inmate to exhaust inmate grievance procedures before bringing suit in a federal court "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages." *Id.* at 524, 122 S.Ct. at 988. In addition, the inmate must "properly" exhaust grievance procedures, including by timely filing his grievance and appeal. *Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91, 126 S.Ct. at 2386. However, exhaustion under the PLRA is an affirmative defense, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007). Because it is an affirmative defense, the requirement of exhaustion "may be subject to certain defenses such as waiver...." *Casanova v. Dubois,* 304 F.3d 75, 78 n. 3 (1st Cir.2002) (quoting *Wendell v. Asher,* 162 F.3d 887, 890 (5th Cir.1998)).

#### Timeliness of Mallory's Grievance

█ It is clear that Mallory did not timely file his grievance within 10 days of the incident. However, the IGC who reviewed Mallory's grievance did not deny it because it had been untimely filed. Instead Mallory's grievance was denied because the "matter is being investigated and the appropriate action will be taken." Similarly, the Superintendent who denied the appeal did not rely on the timing of the grievance, rather he adopted the reasoning of the IGC. Pursuant to 103 C.M.R. 491.19 the IGC and the Superintendent have the

authority to waive the requirement that grievances be timely filed. ("Failure by a grievant to comply with the time restrictions imposed by 103 C.M.R. 491.00, *unless waived by the Institutional Grievance Coordinator or Superintendent,* shall terminate the grievance process.") (emphasis added). While the IGC and Superintendent did not explicitly waive this justification for denial, the fact that they did not deny on timeliness grounds but instead considered Mallory's grievance on the merits and stated that the matter would be addressed, effectively waived the 10 day time limit for filing. *See Carter v. Symmes,* No. 06–10273–PBS, 2008 WL 341640, at *3 (D.Mass. Feb. 4, 2008) (holding that any deficiency in an inmate's grievance form was apparently waived because the prison addressed the inmate's allegations fully on their merits); *Maraglia v. Maloney,* No. 2001–12144–RBC, 2006 WL 3741927, at *7 (D.Mass. Dec. 18, 2006) (where DOC did not deny grievance because it was untimely, but rather because it was "non-grievable," "the IGC waived the institutional time limitations"). *See also Griswold v. Morgan,* 317 F.Supp.2d 226, 229–30 (W.D.N.Y.2004) (in evaluating whether IGC waived timeliness requirement for grievance, court applies the rules applied in habeas corpus cases: "if a state ignores a potential procedural bar and reaches the merits of a prisoner's claim, the federal habeas courts may consider the claim") (quotation omitted). For these reasons, this court finds that dismissal on the grounds that Mallory's grievance was not timely is not warranted.

#### Lack of Details in Mallory's Grievance

█ The United States Supreme Court has determined that the grievance system, and not the PLRA determines whether a grievance is sufficient to exhaust administrative remedies. *Jones,* 549 U.S. at 218,

127 S.Ct. at 923. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirement, and not the PLRA, that define the boundaries of the proper exhaustion." *Id.* Pursuant to 103 C.M.R. 491.09(2)(D), grievances at CJ must contain six pieces of information: "(A) the date of occurrence of the incident; (B) the name of current institution; (C) the name of institution of complaint; (D) a brief statement of facts; (E) the remedy being requested; (F) the signatures of both the inmate and staff recipient." Mallory's grievance form provides all of the required elements. However, it does not specifically identify a grievance with any of the Defendants, or explain the legal basis for his claims. Instead the grievance lists the injuries Mallory suffered from the attack and requests monetary damages in compensation for his suffering. This court finds the details provided by Mallory to be sufficient.

The primary purpose of a grievance system is to alert prison officials of problems, not to act as notice that particular prison officials may be sued. *Jones,* 549 U.S. at 219, 127 S.Ct. at 923. Therefore, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* Moreover, where, as here, the DOC grievance form does not require the inmate to name defendants or state legal claims, the grievant must only provide "sufficient notice to investigate and consider all grounds for the prisoner's civil rights complaint." *Carter,* 2008 WL 341640, at *4. In the instant case, Mallory has done so.

There is no question that the incident was a significant one and that the prison officials were aware of it. Consequently, they responded to the grievance by acknowledging that the matter was under investigation. Defendants have not and cannot claim that they did not understand that Mallory's demand for $10 million was directed at prison officials. Moreover, in his appeal, Mallory made it clear that he was seeking compensation for alleged violations of his civil rights, claims which are by their nature directed towards prison officials and not to other inmates. While this did not provide specific notice of who would be later named as defendants, it provided sufficient notice for the prison to investigate and try to resolve the underlying issues.

Consequently, because Mallory complied with the requirements of 103 C.M.R. 491.09(2) and it was clear that Mallory was making a claim against prison officials, this court recommends that the Defendants not be granted summary judgment on the basis that Mallory failed to exhaust his administrative remedies.

### B. *Claims Under 42 U.S.C. § 1983*

█ In his complaint, Mallory is seeking recovery against the Defendants under 42 U.S.C. § 1983, for alleged violations of his rights under the Eighth Amendment of the Constitution, for alleged violations of Mass. Gen. Laws ch. 124, § 1(f), and for alleged violations of Mass. Gen. Laws ch. 127, § 32. For the reasons detailed herein, the Defendants are entitled to judgment in their favor on each of these claims.

█ Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quotations and citation omitted). It states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the Unit-

ed States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action, at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores,* 103 F.3d 1056, 1061 (1st Cir.1997). There is no dispute that the Defendants were acting in their official capacities as prison officials at all relevant times and were therefore acting under color of state law. However, Defendants contend that they did not deprive Mallory of any federally guaranteed rights.

### 1. *Claim of Eighth Amendment Violation*

■ Mallory claims that Defendants violated his rights under the Eighth Amendment of the U.S. Constitution by acting with deliberate indifference to his health and safety by failing to stop Higgins' assault on him. "An alleged Eighth Amendment violation is analyzed according to the framework laid out in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), as further explicated in *Giroux v. Somerset County,* 178 F.3d 28 (1st Cir. 1999), and *Calderón–Ortiz v. LaBoy–Alvarado,* 300 F.3d 60 (1st Cir.2002)." *Burrell v. Hampshire County,* 307 F.3d 1, 7 (1st Cir.2002). Prison officials have a duty to protect prisoners from violence at the hands of other inmates. *Farmer,* 511 U.S. at 833, 114 S.Ct. at 1977. "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection

and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (internal quotations and citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S.Ct. at 1977.

As the court explained in *Burrell:*

The *Farmer* test for Eighth Amendment violations initially establishes two tests. First, the deprivation alleged must be, objectively, sufficiently serious. For a claim based on failure to prevent harm, the plaintiff must demonstrate he was incarcerated under conditions imposing a substantial risk of serious harm. Second, the plaintiff must show that prison officials possessed a sufficiently culpable state of mind, namely one of "deliberate indifference" to an inmate's health or safety. That state of mind is more blameworthy than negligence.

*Burrell,* 307 F.3d at 8 (internal citations omitted). The "deliberate" part of "deliberate indifference" requires "that a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation omitted). The "indifference" part means that even if prison officials are aware of the risk, "they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided." *Id.* (citation omitted). "Thus, under the second requirement of *Farmer,* plaintiffs must show: (1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." *Calderon–Ortiz,* 300 F.3d at 64. Finally, "[a]ny inquiry into the reasonableness of the prison officials' actions incorporates

due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Burrell*, 307 F.3d at 8 Applying these principles to the instant case mandates the conclusion that the Defendants' motion for summary judgment should be allowed.[4]

As an initial matter, the undisputed facts establish that the prison conditions did not create a serious risk of harm. The record does not establish that the kitchen was an overwhelmingly dangerous place to work. While there had been a few incidents in the year prior to the assault on Mallory, they were not especially serious in nature and were not exceptional in a maximum security prison. *See* note 2, *supra;* Toomey Aff. ¶¶ 16–17. None involved the use of food as a weapon. Moreover, Mallory had worked with Higgins for months without incident. Thus, Mallory has not satisfied the first part of the *Farmer* test.

In addition, the evidence does not establish that the Defendants were deliberately indifferent to Mallory's health or safety. There is no evidence of history of tension or altercations between Mallory and Higgins which would have put the Defendants on notice, nor was there any evidence that Higgins had any particular animosity directed towards Mallory that would have necessitated any protective action by prison officials. Further, even accepting Mallory's version of events as true, Higgins' conduct prior to the assault would not have caused prison officials concern. Thus, after some non-confrontational communications, according to Mallory, Higgins proceeded to boil 30 pounds of butter or oil, calmly carry it in Mallory's direction and then dump it on his head and shoulders. Mallory did not take any defensive action to prevent this assault, implying

that he did not feel threatened by Higgins' actions. Mallory has offered no explanation as to why prison officials should have perceived Higgins' assault when apparently Mallory himself did not.

Mallory alleges that Higgins was mentally unstable and had a history of violence. There is no support for the claim of mental illness. While Higgins had a history of being disruptive in prison, the last violent incident had been more than a year earlier, and had not involved Mallory. In fact, Higgins and Mallory had apparently been working together in the kitchen for months without incident. Even on the day of the incident, Mallory had not expressed any concerns about being in the same area as Higgins, even though the two men had communicated on several occasions. Thus, the record does not establish that the Defendants would have had particular concerns about having Higgins in the kitchen.

Mallory also indicates that Higgins may have attacked him because Mallory was Caucasian while Higgins was African American. Mallory does not present any evidence that race was a motivation in this attack or why prison officials should have been aware of any increased risk because of this racial difference. In short, the record does not establish that the Defendants had any reason to anticipate the attack on Mallory by Higgins or that, "[g]iven the totality of the circumstances as understood by prison officials at the time," the defendants "fail[ed] to take reasonable measures to avert potential harm." *Burrell*, 307 F.3d at 8 (although prison officials were aware of tensions between inmates and were advised by the subsequent victim that there might be a fight, officials were not deliberately indifferent

---

4. In light of this conclusion, this court will not address the roles of the individual defendants on the day in question. The court does recognize however that neither Superintendent Marshall nor Director of Food Services Toomey were present at the incident.

as a matter of law where officials knew of no motive for an attack, there was no history of significant altercations between the inmates and it had been nine months since the attacker had been disciplined for violent behavior).

Finally, Mallory points to the 22 minute discrepancy in times recorded in the various reports, and argues that material facts are in dispute as to how long the fight progressed prior to Kenney stopping it. However, Mallory himself does not contend that Higgins was allowed to pour the scalding liquid over him for 22 minutes, or that he went without prompt medical attention. Rather, there simply appears to be a different time recording in reports generated for different purposes. Even reading the record in the light most favorable to Mallory, the prison officers intervened soon after Higgins attacked Mallory, and Mallory received prompt medical attention. Unlike the cases on which Mallory relies, this is not a case where prison officials affirmatively ignored a prisoner who was in pain and in need of medical attention. *Compare Williams v. Mueller,* 13 F.3d 1214, 1215–16 (8th Cir.1994) (allegation that correction officer closed and locked dormitory door knowing prisoner assault was taking place, and delayed calling for help so that 20–25 minutes passed before beating stopped, states a claim of deliberate indifference to prisoner's Eighth Amendment rights); *McNeal v. Macht,* 763 F.Supp. 1458, 1463–64 (E.D.Wis.1991) (complaint that prison guards stood by and "did nothing" for "some seven minutes" as inmate was "repeatedly bit and hit about the face" in an "unprovoked assault by an inmate who was known to be dangerous" states a claim for violation of the Eighth Amendment); *Ayala Serrano v. Lebron*

*Gonzalez,* 909 F.2d 8, 13–14 (1st Cir.1990) (prison guard not entitled to qualified immunity where evidence at trial established that he stood by during a prisoner assault, and did not attempt to intervene or call for help: the "failure to act was clearly unreasonable"). Mallory has not alleged that if officials had acted sooner, harm would have been avoided, and the record does not support such a conclusion. Thus, there are no material facts in dispute precluding the entry of summary judgment.

In sum, under the totality of circumstances known to the Defendants, no jury could reasonably find that the prison conditions complained of created a substantial risk of serious harm, or that the Defendants were deliberately indifferent to Mallory's health or safety.[5] Therefore, this court recommends that summary judgment be entered in the Defendants' favor on Mallory's Eighth Amendment claim.

### 2. *Mass. Gen. Laws ch. 124, § 1(f)*

Mallory claims that Defendants violated his rights under Mass. Gen Laws ch. 124, § 1(f) by not preventing Higgins' attack on him. Mallory claims that his injuries prevent him from engaging in rehabilitation programs at the prison.

Mass. Gen. Laws ch. 124, § 1(f) provides as follows:

> In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction, in this chapter called the commissioner, shall ... (f) establish a system of classification of persons committed to the custody of the department for the purpose of developing a rehabilitation program for each such person.

---

5. In light of this conclusion, this court declines to address whether the Defendants are entitled to qualified immunity. *See Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19, 27

n. 3 (1st Cir.2006) (court does not reach issue of qualified immunity where the plaintiff has failed to make a prima facie case under 42 U.S.C. § 1983).

The basis for Mallory's claim that there has been a violation of this provision is unclear, as there are no contentions relating to the sufficiency of any systems of classifications at the prison. In any event, by its terms this statute applies only to the Commissioner of Correction, and he is not a party to the present action. Therefore, this court recommends that summary judgment be entered in favor of the Defendants on this claim.

### 3. *Mass. Gen. Laws ch. 127, § 32*

Mallory claims that Defendants violated his rights under Mass. Gen. Laws ch. 127, § 32 by not preventing the attack and thus taking away Mallory's right to be treated with the "kindness" that his "obedience, industry and good conduct merit[s]." As the statute provides:

> The superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness which their obedience, industry and good conduct merit.

As an initial matter, this statute only creates a duty for "superintendents of the institutions under the supervision of the department of correction" and does not apply to other correction officials. Therefore, this claim should be dismissed without discussion as to all Defendants except Marshall, who was the superintendent of

MCI–Cedar Junction at the time of the incident.

With regard to Marshall, Mallory offers no evidence or argument as to how this statute was allegedly violated. There is no evidence that Mallory was not treated with the "kindness" that his "good conduct" merited. Having found that Defendants did not act with deliberate indifference there is no other allegation that Marshall directed any treatment towards Mallory at all. Consequently this court recommends that Defendants motion for summary judgment as to this claim be allowed.

## V. CONCLUSION

For all of the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Defendants' Motion for Summary Judgment (Docket No. 30) be ALLOWED.[6]

August 12, 2009

---

6. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See*

*Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–05 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).